RENDERED:  FEBRUARY 21, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0004-MR

EBONY POYNTER, AS
ADMINISTRATOR OF THE ESTATE
OF ISAIAH WOODSON, DECEASED;
AND MALIK STAFFORD                                              APPELLANTS


                APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE ANN BAILEY SMITH, JUDGE
                    ACTION NO. 20-CI-005831


JULIUS L. JOHNSON AND GREG
COATS CARS, INC.                                                   APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, A. JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  This appeal is from a partial summary judgment granted

in favor of an automobile dealer based on the trial court's determination that the

dealer was not the statutory owner of a car involved in a fatal one-vehicle accident.

Faced with an issue of first impression, the trial court based its grant of summary

judgment on its application of the Transportation Cabinet Secretary's early-

COVID-era official order extending by 90 days expiration dates and/or deadlines relating to vehicle registration and drivers' licenses and permits. We find the trial court erred in determining that the official order applied to extend a dealer's duty to promptly deliver title/registration documents on the buyer's behalf to the county clerk and granted summary judgment based solely on that order's application. Therefore, we vacate the grant of summary judgment and remand for further proceedings consistent with this Opinion.

**FACTS**

Shortly after the Governor declared a state of emergency due to COVID, the Secretary of the Kentucky Transportation Cabinet issued Official Order No. 112155 ("the official order") on March 18, 2020. The official order called for extending by 90 days expiration dates and deadlines relating to drivers' licenses, permits, and vehicle registrations.

Meanwhile, Appellee Greg Coats Cars, Inc. ("GCC") acquired a 2008 Dodge Charger ("the car") from a dealership in West Virginia – also on March 18, 2020. The West Virginia dealership assigned a clean certificate of title on the car to GCC on that same day. GCC admittedly did not notify the county clerk's office of the assignment of the car to its dealership within fifteen days. *See* KRS[1] 186A.220(1).

---

[1] Kentucky Revised Statutes.

On April 7, 2020, Julius L. Johnson ("Johnson") purchased the car from GCC. GCC personnel verified that Johnson had automobile liability insurance at that time. Johnson executed a limited power of attorney, designating GCC as his attorney-in-fact so it could deliver the certificate of title assignment and the application for certificate of title and registration (collectively, "title/registration documents") on his behalf to the county clerk's office. Johnson also took possession of the vehicle on April 7, 2020. About two weeks later (on or about April 23), Johnson's insurer sent him a notice of recission of coverage because his bank did not honor his premium payment.

On May 1, 2020, Johnson was driving the car when it was involved in a single-vehicle accident. Malik Stafford ("Stafford") was riding in the car and was injured. Isaiah Woodson ("Woodson") was also riding in the car and died.

On May 27, 2020, the title/registration documents were delivered to the Jefferson County Clerk's office for processing by GCC's runner.[2] In-person services at the county clerk's office had been shut down for several weeks, although dealers were informed by email that they could drop off documents at designated locations in county clerk's offices for processing. After the application

---

[2] The Appellants point out in their brief that a GCC employee notarized the certificate of title reassignment form on May 27, 2020 – the same date the registration/title documents were delivered to the county clerk's office by GCC's runner.

for title and registration was processed, title was transferred to Johnson on June 1, 2020 – the same date that in-person services resumed at the county clerk's office.

In the fall of 2020, Stafford and the administrator of Woodson's estate (collectively, "Appellants") filed suit against Johnson and GCC. They alleged their injuries were caused by Johnson negligently operating the car. They also alleged that GCC negligently entrusted the car to Johnson.

Appellants also alleged in their complaint that GCC failed to properly transfer title to Johnson pursuant to the requirements of KRS 186A.220(5). They pointed out GCC was the title holder to the car at the time of the accident on May 1, 2020, and argued GCC should be required to extend insurance coverage to the car. Appellants asserted they were entitled to basic reparation benefits from GCC's insurer, but GCC refused to respond to requests for policy information.

GCC filed an answer and discovery ensued. Both Appellants and GCC later filed motions for partial summary judgment about whether GCC was the statutory owner of the car for insurance purposes at the time of the fatal accident.

Ultimately, the trial court granted summary judgment in GCC's favor on the statutory owner issue, concluding the official order applied so the dealership had at least 90 days in which to deliver the title/registration documents to the county clerk. Despite GCC's taking 50 days after the April 7th purchase date to deliver the documents to the county clerk's office, the trial court determined the

-4-

delivery of the documents was well within the 90-day extension and the delay was therefore justified.

Appellants filed a timely appeal from the trial court's judgment. They argue on appeal that the trial court erred in determining that the 90-day extension in the official order applied to GCC's delivery of the title/registration documents to the county clerk's office. Appellants also contend the trial court erred in determining the delay in delivery was justified and that GCC was therefore not the statutory owner of the car. Further facts will be provided as necessary.

## ANALYSIS

### Standard of Review

We review *de novo* (without deference) the trial court's grant of summary judgment and its determination that GCC was not the statutory owner of the car. *Zepeda v. Central Motors, Inc.*, 653 S.W.3d 59, 62 (Ky. 2022). Moreover, we review the trial court's interpretation of the official order and legal authority including statutes and precedent *de novo*. *See Fletcher v. Graham*, 192 S.W.3d 350, 356 (Ky. 2006) ("[Q]uestions of law are reviewed de novo.").

### Basic Principles for Determining the Statutory Owner of a Car

As our Supreme Court recently discussed in *Zepeda*, Kentucky is "a certificate of title state for the purpose of determining ownership and for requiring liability insurance coverage[.]" 653 S.W.3d at 62. This means that: "Unless

certain statutory provisions are met, [t]he owner of a motor vehicle is the title holder[.]" *Travelers Indemnity Company v. Armstrong*, 565 S.W.3d 550, 556 (Ky. 2018) (internal quotation marks and citation omitted).

For example, the owner of a car for insurance purposes can, under certain circumstances, be a purchaser who has taken physical possession of a car in a *bona fide* sale even if the purchaser does not yet hold legal title to the car. *See* KRS 186.010(7)(a) (defining the *owner* of a motor vehicle as: "a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest").

Based in part on KRS 186.010(7)(a), Kentucky precedent recognizes an exception to the certificate of title rule providing that a dealer is not considered the statutory owner of a car for insurance purposes even if the dealer held the title to the car at the time of the accident so long as the dealer substantially complied with KRS 186A.220's requirements. *See Zepeda*, 653 S.W.3d at 61 (citing, *e.g.*, KRS 186.010(7)(a)) ("If a licensed motor vehicle dealer delivers physical possession to the buyer and complies with KRS 186A.220 then ownership [for insurance purposes] transfers upon physical delivery of the vehicle.").

KRS 186A.220 imposes certain requirements on dealers. For example, KRS 186A.220(1) states:

Except as otherwise provided in this chapter, when any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee.

KRS 186A.220(1)'s directive that a dealer shall notify the county clerk of the assignment of a vehicle to the dealership within 15 days has been interpreted not to be a mandatory requirement. *Armstrong*, 565 S.W.3d at 567. ("The provisions in sections 1 to 4 of KRS 186A.220 are directory, rather than mandatory."). So, our Supreme Court has held that a failure to strictly comply with KRS 186A.220(1)'s 15-day limit does not necessarily mean that a dealer should be considered the owner of a vehicle for insurance purposes. Instead, so long as the dealer has substantially complied with the intent of KRS 186A.220 – including notifying the county clerk of the assignment after more than 15 days but prior to the accident – the dealer may not be considered the vehicle's statutory owner even though the dealer still holds title to the vehicle.[3] Nonetheless, our

---

[3] Appellants argue GCC cannot avoid being deemed the statutory owner because it failed to deliver to the county clerk the title/registration documents before the accident. They contend that published Kentucky appellate precedent holding a dealer could not be considered the statutory owner despite not delivering any documents to the county clerk before the accident is distinguishable because the dealer in that case had not received formal title to the vehicle before the purchased car was involved in an accident the day after the purchaser took physical possession after providing insurance verification. *See Auto Acceptance Corp. v. T.I.G. Ins. Co.*, 89 S.W.3d 398, 400-01 (Ky. 2002). However, we take no position regarding whether GCC

Supreme Court has warned that a dealer should "timely comply" with KRS

186A.220 requirements "lest it be liable for damages before it complies."

*Armstrong*, 565 S.W.3d at 567.

Of course, in addition to KRS 186A.220(1), the dealer also has certain

obligations under other KRS 186A.220 provisions including KRS 186A.220(5).

For example, if an individual purchaser consents to the dealer directly delivering to

the county clerk the assigned certificate of title and other needed documents to

apply for a certificate of title and registration on the purchaser's behalf, the dealer

must verify proof of insurance before allowing the purchaser to take physical

possession of the vehicle. *See* KRS 186A.220(5)(b).[4]

Though KRS 186A.220(5)(b) does not explicitly state any time frame

for the dealer to deliver title/registration documents to the county clerk, KRS

186A.215(3) states that applications for certificate of title and registration and

---

could be held the statutory owner despite GCC's admittedly having assigned to it a clean certificate of title on the car before the accident occurred. Instead, we remand for the trial court to determine whether GCC acted promptly under the circumstances in delivering the registration/title documents to the county clerk or whether delay was justified as a matter of law based on the evidence before it.

[4] In contrast to the substantial compliance rule for KRS 186A.220(1)'s 15-day requirement, our Supreme Court has recognized that a dealer must strictly comply with at least one requirement in KRS 186A.220(5)(b) – particularly insurance verification. *See Armstrong*, 565 S.W.3d 566-67 ("[T]he purpose behind the construction of these statutes is to ensure that each vehicle on the roadway is properly and adequately insured. Thus, we hold firm to the determination that a dealer must strictly comply with the requirement in KRS 186A.220(5). However, as we have previously held, the requirement for proof of insurance is irrelevant in this dealer-to-dealer transaction.").

supporting documents "shall promptly be submitted to the county clerk" along with required fees.  Furthermore, precedent recognizes a promptness requirement for a dealer's direct delivery of the title/registration application and supporting documents on the buyer's behalf to the county clerk pursuant to KRS 186A.220(5)(b).  *See Ellis v. Browning Pontiac-Chevrolet-GMC Truck-Geo, Inc.*, 125 S.W.3d 306, 308 (Ky. App. 2003), *discretionary review denied* (Feb. 11, 2004) (holding "the promptness requirement of KRS 186A.215(3) applied to all transfers including those covered by KRS 186A.220" and determining dealer to be the statutory owner since, in taking 39 days to deliver title/registration documents to the county clerk without offering any reason for the delay, the dealer failed to use due diligence to deliver documents necessary to promptly transfer ownership). *See also Armstrong*, 565 S.W.3d at 565-66 (noting *Ellis*' holding recognizing promptness requirement for transfers pursuant to KRS 186A.220 without criticizing this holding).

The trial court's orders reflect an admirable awareness of controlling statutes and precedent about determining statutory ownership, even such recent precedent as *Zepeda* (rendered while this case was pending before the trial court). In addition to grappling with controlling statutes and precedent, the trial court was also faced with novel, difficult issues – including the extent to which COVID-related difficulties might justify some degree of delay and whether the 90-day

extension in the official order applied here. Faced with such difficult issues of first impression, the trial court obviously put forth great effort to carefully consider the parties' well-researched and well-written arguments and to render its own thoughtful and well-written orders. We appreciate its efforts. Nonetheless, we disagree with the trial court's conclusion that the 90-day extension in the official order applied to the dealer's delivery of the title/registration documents to the county clerk's office.

**Trial Court Erred in Concluding that 90-Day Extension in Official Order Applied to Requirement that Dealer Act Promptly in Delivering Title/Registration Application Documents to County Clerk's Office**

Before addressing the parties' arguments concerning whether the official order applied to the situation here, we briefly summarize its contents.

Official Order No. 112155 begins with the notation "SUBJECT: DECLARATION OF EMERGENCY, 90 DAY EXTENSION OF OPERATOR'S LICENSES EXPIRATION DATES AND REGISTRATION DEADLINES." The order notes that pursuant to executive order, government offices offering in-person services (including offices issuing drivers' licenses) were then closed indefinitely to the public in furtherance of COVID mitigation measures such as self-isolation and social distancing.

The official order notes the statutory requirement that drivers' licenses be renewed every eight years in a "whereas" clause. Next, in other "whereas"

clauses, the order recognizes that "KRS 186 and KRS 186A require timely registration of vehicles and vessels" and that then-current COVID-related circumstances made it difficult or impossible for Kentucky drivers' license holders to renew their licenses or vehicle registrations.

Following these whereas clauses, the order extends the expiration dates of Kentucky drivers' licenses and permits by 90 days and further states:

> The expiration date of vehicle or vessel registration certificates, vehicle license plates, vehicle tag certificates and handicapped parking permits and *other deadlines mandated by the Department of Vehicle Registration*, including lien filings, are hereby extended for a period of 90 days, subsequent to their current expiration dates, and any additional fees for the late renewal of or application for such licenses, permits, certificates, cards and plates are hereby waived.

(Emphasis added.)

GCC argued to the trial court that the official order applied and gave it 105 days to deliver the title transfer documents to the county clerk's office – *i.e.*, extending by 90 days KRS 186A.220(1)'s 15-day limit to notify the county clerk of the vehicle being assigned to/acquired by the dealer. The trial court did not explicitly accept the argument about GCC's having 105 days to deliver documents to the county clerk. Nonetheless, the trial court determined GCC's delivery of registration/title documents to the county clerk's office 50 days after the April 7

-11-

purchase date was well-within the 90-day extension in the official order – which it perceived to apply here.

In concluding the official order applied here, the trial court determined the promptness requirement for the dealer's delivery of the titling/registration documents was a deadline and that the official order extended by 90 days all deadlines under KRS Chapters 186 and KRS 186A. However, Appellants point out that GCC's counsel conceded during a trial court hearing that the promptness requirement was not a deadline. Moreover, GCC's Appellee brief does not dispute that it conceded the promptness requirement was not a deadline.

Appellants also point out the official order refers to extending deadlines "for a period of 90 days, *subsequent to their current expiration dates*." (Emphasis added.) They point out the promptness requirement for delivering title/registration documents to the county clerk's office does not have a current expiration date.

In addition to arguing that the promptness requirement for delivering title/registration documents to the county clerk was not a deadline, Appellants also argued that the official order did not apply to dealers in this context. We agree.

Appellants point out that the official order notes government offices were then closed indefinitely to the public for in-person services and that COVID-related circumstances made it difficult for drivers' license holders to renew their

licenses or vehicle registrations. Unlike the general public lacking any access to county clerk's offices for renewing licenses or registrations at the time, Appellants point out dealers had at least some access to county clerk's offices since dealers were offered the opportunity to drop off documents for processing at drop boxes or other designated locations in county clerk's offices.

Moreover, Appellants assert in their brief that the official order clearly was aimed solely at avoiding "expiration of registrations and licenses of those who were unable to access county clerks' offices due to COVID-imposed closure." They point to the Governor's July 2020 memorandum stating the official order's purpose was to provide a grace period for Kentuckians with quickly approaching license and vehicle registration expiration dates.

In contrast, GCC argues the trial court correctly concluded that the official order extended the promptness requirement. In its brief, GCC asserts: "Compliance with KRS 186A.220(5) is necessarily related to compliance with KRS 186A.220(1)." GCC asserts it must first notify the county clerk of its acquisition of the vehicle under KRS 186A.220(1) before it can attempt to transfer title under the procedure outlined in KRS 186A.220(5). Thus, GCC contends the 15-day period in KRS 186A.220 was extended by 90 days and the promptness requirement for delivering title transfer documents to the county clerk's office was therefore also extended. It even asserts the promptness requirement does not kick

in until the KRS 186A.220(1) 15-day requirement as extended by the official order has passed.

Responding to this argument, Appellants assert in their reply brief that GCC has confused two different sets of statutory requirements in KRS 186A.220 – requirements related to dealers' acquiring vehicles versus requirements related to transferring titles to individual purchasers. Moreover, as Appellants further point out, KRS 186A.220(1)-(4)'s requirements about dealerships' notifying county clerk's offices about their acquiring vehicles from out of state or elsewhere – including the 15-day deadline – are not at issue here.

Instead, Appellants identify the real issue as whether GCC complied with statutory requirements that dealers must follow when transferring ownership of vehicles to individual purchasers—most notably the requirement to promptly deliver documents needed for title transfer to the county clerk when seeking to transfer ownership pursuant to KRS 186A.220(5). *See also* KRS 186A.215(3); *Ellis*, 125 S.W.3d at 309.

Appellants' reply brief further asserts: "GCC incorrectly claims that its deadline for notifying the county clerk *that it had acquired the vehicle* dictates the deadline for GCC to notify the county clerk *that it had sold the vehicle*." (Emphasis in original.) Moreover, they contend GCC is misinterpreting the

statutes in such a way as to ask "the court to find a 'deadline' where none exists" so that GCC can benefit from the 90-day extension in the official order.

While we do not cast aspersions on either party or their counsel regarding the arguments made, we agree with Appellants that the official order does not apply to afford a 90-day extension to the requirement that a dealer act promptly in delivering the title/registration application and supporting documents to the county clerk's office on a buyer's behalf. Clearly, the primary focus of the official order was to provide a 90-day extension on looming expiration dates for drivers' licenses, permits, and vehicle registrations. Moreover, deadlines for renewing licenses and registrations were fixed with current expiration dates. In contrast, there was no fixed deadline or current expiration date to extend regarding the promptness requirement and such a flexible requirement cannot reasonably have been extended by a fixed period of 90 days.

And despite the official order's numerous references to renewing expiring *registrations*, nowhere does it explicitly refer to "title" or "ownership" or to procedures for transferring title or ownership of vehicles. The only language in the official order which might possibly apply to proceedings related to transferring ownership is the order's vague extension of "other deadlines mandated by the

Department of Vehicle Registration"[5] – especially since a purchaser must generally apply for registration and title at the same time. Nonetheless, the 90-day extension of other deadlines mandated by the Department of Vehicle Registration in the official order expressly applies "subsequent to their current expiration dates" and there is no current expiration date for promptly submitting title/registration applications with supporting documents. Despite the official order's clearly extending the expiration dates of existing vehicle registrations, it does not extend the promptness requirement for the dealer's delivery of title transfer documents to the county clerk recognized in *Ellis*, 125 S.W.3d at 308.

In sum, reviewing the issue *de novo*, we conclude the trial court erred in concluding that the official order applied to provide a 90-day extension for GCC to deliver the title/registration documents to the county clerk's office. Therefore, we must vacate the trial court's order granting summary judgment in GCC's favor based on the application of the 90-day extension in the official order.

---

[5] It is unclear whether such a Department of Vehicle Registration even existed at the time. Apparently, the Kentucky Transportation Cabinet presently contains no such department, according to its organizational chart. *See* https://transportation.ky.gov/Organizational-Resources/Documents/Cabinet%20Executive%20Offices.pdf (last accessed Dec. 12, 2024). *See also* KRS 174.020 (listing major departments of the Kentucky Transportation Cabinet as including a Department of Vehicle Regulation, KRS 174.020(1)(c), but not mentioning a Department of Vehicle Registration). *But see* 601 Kentucky Administrative Regulations ("KAR") 2:020 § 8(2) (stating certain materials may be obtained during regular business hours from the Department of Vehicle Registration at the Transportation Cabinet Building on Mero Street in Frankfort).

**We Decline to Reach Whether GCC Acted Promptly under the Circumstances or Delay was Justified as a Matter of Law Considering the Evidence and Disregarding the Official Order**

We vacate the trial court's final order granting summary judgment based on its application of the official order's 90-day extension. However, we decline to address the parties' arguments about whether the 50 days it took GCC to deliver the title/registration documents to the county clerk's office was prompt under the circumstances or the result of a justified delay based on the evidence.

The trial court clearly indicated that the official order was the sole basis for its conclusion that the delay was justified. Given its mistaken conclusion that the official order applied here to provide a 90-day extension, the trial court explicitly deemed such matters as the availability of drop boxes for dealers to drop off documents at the county clerk's office to be irrelevant since the trial court viewed the official order as providing a blanket 90-day extension without a need to prove actual difficulties caused by COVID-related circumstances. Though the trial court suggested that ordinarily taking 50 days to deliver the title transfer documents would not be considered prompt, the trial court determined the delay here was justified based solely on the official order's 90-day extension.

In determining the delay was justified, the trial court did not indicate it relied on the evidence in this case which the parties have discussed in their appellate briefs. For example, the trial court did not indicate it considered

evidence GCC remained open for business and continued to sell vehicles at all relevant times, testimony about COVID-related confusion and backlogs and clerk's offices being closed for illness, testimony about GCC's title clerk's working hours and health challenges, and evidence about whether an email address was required to transfer title and/or whether there were difficulties in obtaining Johnson's email address.

Even if the parties might prefer that this Court make the initial determination whether, based solely on the evidence of record and disregarding Official Order No. 112155, GCC acted promptly under the circumstances, or the delay was justified, we decline to do so. "As an appellate court, we review judgments; we do not make them." *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014). It would not be proper for us to make the initial determination whether, disregarding the official order as inapplicable, GCC acted promptly under the circumstances or delay was justified as a matter of law based on the evidence in the record.

So, we remand with directions for the trial court to resolve whether, based on the evidence before it, GCC acted promptly under the circumstances or the delay in delivering the title/registration application to the county clerk's office was justified as a matter of law. If upon its review of the evidence and disregarding the official order, the trial court concludes there is no genuine issue of

material fact and that either party is entitled to judgment in their favor as a matter of law based on promptness under the circumstances (or lack thereof) or justification for delay (or lack thereof), the trial court may properly enter partial summary judgment for that party on the statutory owner issue.[6]

Further arguments in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the reasons stated herein, we VACATE the grant of summary judgment and REMAND with directions for the trial court to consider based on the evidence – disregarding the official order – whether GCC acted promptly under the circumstances or whether the delay in delivering title/registration documents to the county clerk's office was justified as a matter of law.

---

[6] We recognize that both GCC and Appellants perceive a lack of genuine issue of material fact and that both believe that based upon the evidence, they are entitled to judgment in their favor as a matter of law on the statutory owner issue – as shown by their cross-motions for summary judgment – based on promptness, justification for delay or the lack thereof. Nonetheless, it is solely for the trial court to determine whether, based on the pleadings and evidence of record, either party has shown a lack of genuine issue of material fact and entitlement to judgment in its/their favor as a matter of law. *See* Rules of Civil Procedure ("CR") 56.03 ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). *See also Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted) (trial court "should not render a summary judgment if there is any issue of material fact. The trial judge must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists").

We express no opinion on whether summary judgment regarding the statutory owner issue must be granted in either party's favor or at all on remand.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Danielle Reesor Blandford
Brenton D. Stanley
Louisville, Kentucky

BRIEF FOR APPELLEE GREG
COATS CARS, INC.:

Michelle L. Burden
Ft. Mitchell, Kentucky